IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
    Plaintiff,

  v.

IVAN CERNA, et al.,
    Defendants.
                           /

No. CR 08-0730 WHA

**ORDER GRANTING DEFENDANT URIAS'S MOTION FOR AN EVIDENTIARY HEARING (DKT. NO. 1022)**

## INTRODUCTION

On October 20, 2008, the government applied for a warrant to search, among other locations, the residence of Defendant Mauricio Urias at 378 Forestview Drive in South San Francisco. Defendant Urias now moves to suppress the seized evidence on the grounds that the affidavit in support of the government's search warrant contained deliberately or recklessly false statements and omissions regarding its description of a telephone call between defendant Urias and a confidential informant. He requests that an evidentiary hearing be held regarding whether the false information was included through intentional falsehood by the government.

This order finds that defendant Urias has made a substantial preliminary showing that the affidavit contained reckless or deliberate falsities. Defendant Urias's motion for an evidentiary hearing therefore is **GRANTED**.

## STATEMENT

This gang prosecution alleges 59 counts against 29 defendants arising from alleged actions of the Mara Salvatrucha gang, also known as MS-13. Most of the defendants in the present action are accused of being members or associates of a San Francisco branch of MS-13

known as the MS-13 20th Street Clique. The alleged offenses include racketeering conspiracy, conspiracy to commit murder, various crimes of violence, narcotics offenses, conspiracy to commit robbery, illegal possession and dealing of firearms and attempted exportation of stolen vehicles, among others.

The trial of defendant Urias has been bifurcated. On January 19, 2010, he will be tried on one count of conspiracy to distribute or possess with intent to distribute over 50 grams of actual methamphetamine, four counts of distribution or possession with intent to distribute over five grams of actual methamphetamine, and four counts of distribution or possession with intent to distribute cocaine. He will be tried in a later trial on additional charges including one count of racketeering conspiracy, one count of conspiracy to commit murder in aid of racketeering, one count of conspiracy to commit assault with a dangerous weapon in aid of racketeering and one count of use or possession of a firearm in furtherance of a crime of violence.

**1.    THE AFFIDAVIT.**

On October 20, 2008, Immigrations and Customs Enforcement Special Agent Christopher Merendino submitted a search warrant application and affidavit seeking judicial authorization to search 17 locations alleged to be the residences of members or associates of the MS-13 20th Street Clique (Def. Decl. Exh. A). One of the premises listed was 378 Forestview Drive in South San Francisco, which was the residence of defendant Urias.

Agent Merendino's affidavit alleged that according to confidential informants CS-1 and CS-2, defendant Urias was a member of MS-13 and was engaged in the distribution of controlled substances (Def. Decl. Exh. A at SW0102). Under ICE's direction, CS-2 made eight controlled purchases of either methamphetamine or cocaine from defendant Urias between May 24, 2006, and January 22, 2008 (Def. Decl. Exh. A at SW0102–04).

During the last of these controlled purchases on January 22, 2008, agents observed defendant Urias as he drove from his home at 378 Forestview Drive to a meeting place in the Mission district of San Francisco where he met CS-2 and allegedly sold him roughly four ounces of cocaine in exchange for $2,200 (Def. Decl. Exh. A at SW0104). According to CS-2, CS-2 then accompanied defendant Urias back to 378 Forestview Drive where he saw defendant

2

Urias retrieve a substance resembling cocaine from a trap hidden underneath the floor of his house (Def. Decl. Exh. A at SW0115). Agent Merendino stated that based on his experience, training and investigation, drug dealers often kept detailed ledgers and records of their narcotics transactions for long periods of time.

In paragraph 40 of the affidavit, Agent Merendino stated:

> "In addition, on or about October 15, 2008, under my direction, CS-2 called Urias and spoke with Urias over the telephone. According to CS-2, during this call, Urias stated that he was still in 'business,' i.e., distributing narcotics, and, when CS-2 asked whether CS-2 could refer an "uncle," i.e., a customer, to Urias, Urias stated that business was 'very good' and that CS-2's 'uncle' should call him."

Based on the foregoing, Agent Merendino submitted that probable cause existed to believe that defendant Urias's residence contained evidence, fruits and instrumentalities relating to the existence and activities of the MS-13 enterprise and other crimes. Magistrate Judge Nandor Vadas signed the warrant on October 20, 2008.

### 2. THE DEFENSE TRANSLATION.

Defendant Urias alleges that paragraph 40 of the affidavit contained material falsehoods and omissions that mischaracterized his October 15 phone call with CS-2. A recording of the phone call was produced to defendant Urias in discovery. Defendant Urias alleges that the defense translation of the call reveals that paragraph 40 omitted significant context and misquoted him. Defendant Urias alleges that because CS-2 made the telephone call to him under the direction and supervision of Agent Merendino that there is good cause to believe that the allegedly false statements and omissions were made intentionally or recklessly.

Specifically, the defense translation indicates that defendant Urias told CS-2 that he was working as a bartender (Def. Exh. B at 4). Defendant Urias alleges that — when considered in the context of a conversation about his work as a bartender — his statements that he is being paid "the same, pretty good now," and offering to help CS-2's uncle find a job are innocent statements about bartending, not narcotics distribution.

Defendant Urias moreover alleges that paragraph 40 of the affidavit falsely held out statements as direct quotes by defendant Urias when in fact they do not reflect his words. The

3

affidavit specifically asserted that defendant Urias stated he was still in "business," and that business was "very good." According to the defense translation of the phone call, neither defendant Urias nor CS-2 ever said the word "business" and defendant Urias never said the phrase "very good."

**ANALYSIS**

**1.   SUBSTANTIAL SHOWING OF FALSITY.**

Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to an evidentiary hearing on the veracity of a search warrant affidavit if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). In *United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986), the Ninth Circuit established a five-prong test that a defendant must satisfy in order to get a *Franks* hearing:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statement must be necessary to find probable cause.

The government argues that paragraph 40 was not false because it did not purport to accurately reflect the conversation between defendant Urias and CS-2 but instead merely reflected CS-2's characterization of the phone call to Agent Merendino. It argues that paragraph 40 stated that the affidavit only purported to describe the phone call "[a]ccording to CS-2." The government argues that defendant Urias is therefore not challenging only the veracity of the affiant Agent Merendino as required by *Perdomo*.

This argument fails to address the affidavit's statement that CS-2 made the telephone call in question to defendant Urias *under the direction* of Agent Merendino. The Ninth Circuit has held that where an affiant knew or should have known the true facts, he cannot intentionally or recklessly misrepresent those facts in support of a search warrant using the pretext that he

was merely relaying the inaccurate statement of an informant . *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985). In light of the fact that the telephone conversation was recorded by the government and was made under his direction, it is a reasonable inference that Agent Merendino was aware that what was actually said during the conversation was different than what was reported in the affidavit and was not incriminating.

To be clear, defendant Urias has not proven that is what occurred here, but conclusive proof is not required to obtain an evidentiary hearing. All that is required is that he make a substantial showing that the affiant intentionally or recklessly omitted or mischaracterized the facts in the affidavit. Given the substantial gap between paragraph 40 and the defense translation of the telephone call between defendant Urias and CS-2, he has met this burden.

The government also argues that defendant Urias has not met the requirements for a *Franks* hearing because he has not submitted affidavits in support of his contentions. In this instance, only Agent Merendino has first-hand knowledge of the preparation of paragraph 40 of the affidavit. It would be untenable to require that defendant Urias obtain an affidavit from Agent Merendino in order to obtain an evidentiary hearing. Defendant Urias has specifically identified the parts of the affidavit in paragraph 40 that he contends were false. He has submitted a transcript of the telephone call that purports to show substantial differences between what was actually said and how the affidavit described the conversation. In this instance, this is sufficient to make the necessary substantial preliminary showing.

The government finally argues that defendant Urias's preliminary showing that the affidavit contained reckless or deliberate falsities or omissions is insufficient to require a *Franks* hearing. A defendant challenging an affidavit ordinarily must also show that the affidavit purged of falsities and supplemented by omissions would not be sufficient to support a finding of probable cause. *See Franks*, 438 U.S. at 171–72.

Notwithstanding the foregoing, defendant Urias has made a substantial showing that either Agent Merendino or CS-2 misrepresented the facts about what was discussed in the October 15 phone call. This is a most troubling scenario. As noted above, CS-2 played an important role in most of the allegations against defendant Urias in Agent Merendino's

affidavit. This order therefore holds that in this instance an evidentiary hearing must be held prior to deciding whether the affidavit purged of alleged falsities and supplemented by alleged omissions would be sufficient to support a finding of probable cause.

## CONCLUSION

For the foregoing reasons, defendant Urias's motion for an evidentiary hearing is **GRANTED**. The government is ordered to produce Agent Merendino and confidential informant CS-2 (whose identity is now known) for examination at the hearing. The hearing will be held on **WEDNESDAY, JANUARY 13, 2010, AT 10:00 A.M.**

**IT IS SO ORDERED.**

Dated: January 8, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE